# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge If Other than Assigned Judge | Nan R. Nolan |
|---|---|---|---|
| **CASE NUMBER** | 02 C 1591 | **DATE** | 10/31/2002 |
| **CASE TITLE** | EEOC vs. Staffing Network | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: EEOC's Motion to Compel Defendant Staffing Network to Answer Plaintiff's Second Set of Interrogatories and First Requests for Production of Documents [12-1] is granted in part and denied in part.

(11) ■ [For further detail see order attached to the original minute order.]

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

EQUAL EMPLOYMENT OPPORTUNITY, )
COMMISSION, )
)
         Plaintiff, )
)
vs. ) Case No. 02 C 1591
)
STAFFING NETWORK, L.L.C., )
)
         Defendant. )

## MEMORANDUM OPINION AND ORDER

NAN R. NOLAN, Magistrate Judge:

    Plaintiff Equal Employment Opportunity Commission ("EEOC") filed a complaint against defendant Staffing Network, L.L.C. alleging that the company subjected Roseann Stuker and a class of women to sexual harassment, which resulted in their being constructively discharged, and retaliated against Stuker for filing a complaint with the EEOC, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*, as amended. Before the Court is the EEOC's Motion to Compel Defendant Staffing Network to Answer Plaintiff's Second Set of Interrogatories and First Requests for Production of Documents. For the reasons set forth below, the motion is granted in part and denied in part.

## DISCUSSION

    Federal Rule of Civil Procedure 26(b)(1) permits discovery into "any matter, not privileged, that is relevant to the claim or defense of any party." Information is relevant for purposes of Rule 26 "if the discovery appears reasonably calculated to lead to the discovery of

admissible evidence." Fed.R.Civ.P. 26(b)(1). "The test for relevance in the discovery area is an extremely broad one." *AM Int'l Inc. v. Eastman Kodak Co.*, 100 F.R.D. 255, 257 (C.D. Ill. 1981). However, a court may limit discovery if, for example, it determines that it is unreasonably cumulative or duplicative, obtainable from another source that is more convenient, less burdensome, or less expensive, or the burden or expense of the proposed discovery outweighs its likely benefit. Fed.R.Civ.P. 26(b)(2); *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002).

In its motion, the EEOC seeks the following information: (1) documents relating to any investigation defendant conducted as a result of Stuker's EEOC charge (Request to Produce No. 7); (2) defendant's quarterly and annual financial statements and federal income tax returns from 1999 to the present (Request Nos. 23 and 24); and (3) the identity of all employees terminated by defendant between January 1, 1999 and December 31, 2000, and the reason(s) for the terminations (Second Set of Interrogatories No. 14). The Court addresses each in turn.

## A. Investigation Documents

In its response to document Request No. 7, defendant produced statements from two class members, Sheri Sprinkle and Cheri Bacon, but withheld statements and/or interview notes from seven other nonparty witnesses on the grounds of privilege. According to defendant, the additional statements were prepared in anticipation of litigation and "were taken at the direct of Staffing Network's attorney." Def. Mem., p. 5. The EEOC first argues that defendant waived any claim of privilege by failing to provide a privilege log. Pl. Mem., p. 4. It is true that defendant delayed some three months until October 22, 2002 in providing the privilege log requested by the EEOC on July 24, 2002. Nevertheless, the cases cited by the EEOC establish

2

only that an inadequate privilege log cannot be the basis for a claim of privilege, not that a delay in providing the log constitutes a waiver of the right to assert a privilege. *See Christman v. Brauvin Realty Advisors, Inc.*, 185 F.R.D. 251, 257-58 (N.D. Ill. 1999); *ConAgra Inc. v. Arkwright Mutual Ins. Co.*, 32 F. Supp. 2d 1015, 1018 (N.D. Ill. 1999).

The party claiming privilege has the burden of establishing that the privilege applies. *See In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000); *Ocean Atlantic Development Corp. v. Willow Tree Farm, L.L.C.*, No. 01 C 5014, 2002 WL 1968581, at *2 (N.D. Ill. Aug. 23, 2002). As noted, defendant claims that the documents at issue are protected by the work product doctrine because they were prepared in anticipation of litigation; that is, "the material [came] into existence because of the prospect of litigation or some articulable claim [was] likely to lead to litigation." *In re Bank One Securities Litigation, First Chicago Shareholder Claims*, 209 F.R.D. 418, 425 (N.D. Ill. 2002). In support of its claim of privilege, defendant states as follows:

> [A]s for the statements and interview notes mentioned in out [sic] response to your request for production #7, the interview notes were taken by the attorney representing Staffing Network at the time. The statements of [Iris] Rivera, [Chris] Thormo, [Janine] Hanigan, and [MaryAnn] Arci, were taken by [Rob] Rutter and were transcribed by Bobbie Larson [defendant's Human Resources Administrator].[1] The statements were taken at the direction of Staffing Network's attorney on May 10, 2000, after Ms. Stuker filed her EEOC claim. Each statement is signed.

The EEOC argues that the mere fact that an EEOC claim has been filed is not a sufficient threat of litigation for purposes of the work product doctrine. *See E.E.O.C. v. Commonwealth*

---

[1] For reasons unknown to this Court, defendant's letter does not identify the statements of two other witnesses, Crystal Saporito and Ray Castro, as privileged documents. However, the Court assumes that defendant is asserting the privilege with respect to these statements as well. *See* Pl. Reply, p. 1.

3

*Edison*, No. 86 C 0236, 1987 WL 13595, at *1 (N.D. Ill. July 8, 1987), *aff'd in part and rev'd on other grounds*, 119 F.R.D. 394 (N.D. Ill. 1988) ("[f]ew charges result in law suits .. [so] the fact that the EEOC had notified defendant of a charge and was investigating it did not carry with it a strong likelihood of litigation"). However, unlike the defendant in *Commonwealth Edison*, Staffing Network prepared the statements and notes with legal assistance and instruction, which suggests that it did expect litigation to result. *Compare Commonwealth Edison*, 1987 WL 13595, at *2 (no evidence that defendant expected litigation to result from EEOC charge because it conducted investigation on its own without consulting an attorney).

The EEOC also claims that defendant has failed to show that the primary motivating purpose behind the creation of the interview notes and statements was to aid in future litigation. Pl. Reply, p. 5. According to the EEOC, the documents were created in the ordinary course of business, as evidenced by defendant's sexual harassment policy. That policy states that defendant will handle complaints of harassment "in a timely and confidential manner" which, the EEOC says, can only be accomplished by conducting an investigation. Pl. Reply, p. 5. But this is mere speculation on the EEOC's part, and there is no evidence that defendant routinely investigates EEOC charges with the assistance of legal counsel. The EEOC has not presented any basis for disputing defendant's representation that the nonparty statements were prepared in anticipation of litigation – that is, in response to Stuker's EEOC charge and any private lawsuit that could follow. *See, e.g., Kennedy v. Fritsch*, No. 90 C 5446, 1991 WL 277624, at *3 (N.D. Ill. Dec. 19, 1991) ("[a]t the time of its creation, the report's purpose was to help [defendant] evaluate its response to the EEOC lawsuit and prepare for an expected private suit by plaintiffs").

On these facts, the Court cannot say that the documents were created in the ordinary course of business and, thus, the privilege applies.

The EEOC next claims that defendant has waived any privilege by putting the requested statements and notes at issue in the litigation. Specifically, defendant raised the following affirmative defense in its answer to the complaint: "This Defendant exercised reasonable care to prevent and correct promptly any harassment and Roseann Stuker and the other unnamed class members unreasonably failed to take advantage of any preventative or corrective opportunities provided by this Defendant or to otherwise avoid harm." Pl. Mem., pp. 1, 6. Defendant claims that the affirmative defense is "premised on Staffing Network's sexual harassment policy not any investigation that occurred after Ms. Stuker made her written claim on May 1, 2000." Def. Mem., p. 4.

Based on defendant's confirmation that it "is not relying on any investigation as an affirmative defense," *Id.* at 5, the Court agrees that defendant has not put that investigation at issue and need not produce otherwise privileged documents relating to it. *Compare Jones v. Scientific Colors, Inc.*, Nos. 99 C 1959 and 00 C 0171, 2001 WL 845650, at *1 (N.D. Ill. July 26, 2001) (defendant impliedly waived privilege by asserting affirmative defense that it exercised reasonable care to prevent and promptly correct harassing behavior "as evidenced by its own undercover investigation of the workplace"). However, to be clear, defendant will not be permitted in the future to rely on its investigation as evidence of its affirmative efforts to prevent or correct any alleged harassment, or of the class members' unreasonable failure to utilize defendant's preventative or corrective opportunities. *See Berry v. Delta Airlines, Inc.*, 260 F.3d

803, 810 (7th Cir. 2001) (plaintiff "waived . . . claim by failing to press it before the district court").

In sum, the documents defendant withheld from its response to Request No. 7 are privileged and defendant did not waive that privilege either by delaying its production of a privilege log or by putting the documents at issue in the case. The EEOC's motion to compel the production of these documents is therefore denied.

The EEOC raises one additional argument with respect to Request No. 7; it claims that even if the documents are privileged, it is entitled to the underlying facts contained in those documents. In that regard, the EEOC now seeks to compel a response to Interrogatory No. 5, which requests a list of witnesses with knowledge relating to the claims or defenses in the case and a description of that knowledge. Pl. Reply, p. 7 n. 4. Because the EEOC raised this alternative theory for the first time in its reply brief, the Court will give defendant an opportunity to respond prior to ruling on this issue. Accordingly, defendant has until November 7, 2002 to submit its response, and the EEOC will have until November 14, 2002 to submit its reply.

**B.     Financial Documents**

Document Request Nos. 23 and 24 seek defendant's financial statements and tax returns from 1999 to the present. The EEOC argues that this information is relevant to determining an appropriate award of punitive damages. Defendant objects, essentially without citation, that evidence of its financial worth "will be inadmissible as irrelevant because any punitive damages which may be considered will be capped." Def. Mem., p. 6. A Wisconsin court recently rejected such an argument in *E.E.O.C. v. Klockner H & K Machines, Inc.*, 168 F.R.D. 233 (E.D. Wis. 1996). In *Klockner*, the parties agreed that "as a general rule, a defendant's financial status is

relevant when a claim for punitive damages has been made." The defendant argued that this general proposition is inapplicable where there is a cap on punitive damages, but the court disagreed. *Id.* at 235. The court found it significant that a jury cannot be informed of the cap, and noted that the defendant failed to cite any authority for its position. *Id.* at 235-36. *See also U.S. v. Matusoff Rental Co.*, 204 F.R.D. 396, 399 (S.D. Ohio 2001) ("[t]he overwhelming majority of federal courts . . . have concluded that a plaintiff seeking punitive damages is entitled to discover information relating to the defendant's financial condition in advance of trial and without making a *prima facie* showing that he is entitled to recover such damages"); *Roberts v. Shawnee Mission Ford, Inc.*, No. 01-2113-CM, 2002 WL 1162438, at *4 (D. Kan. Feb. 7, 2002) ("[i]f a plaintiff has alleged sufficient facts to claim punitive damages against a defendant, information of the defendant's net worth or financial condition is relevant because it can be considered in determining punitive damages") (internal quotations omitted); *Wauchop v. Domino's Pizza, Inc.*, 138 F.R.D. 539, 550 (N.D. Ind. 1991).

Defendant acknowledges the decision in *Klockner* but argues, without citation, that it has a good faith basis for disagreeing with it. Def. Mem., p. 7. This Court is aware of several additional cases not cited by either party which merit discussion in this regard. In *Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499 (7th Cir. 1992), the Seventh Circuit reversed an award of punitive damages because the district court improperly calculated the amount based solely on the defendant's net worth without addressing the issues of compensation and deterrence. *Id.* at 508. In discussing this conclusion, the court stated that it is inappropriate to consider a corporate defendant's wealth or net worth in assessing punitive damages. *Id.* at 508-09. Several courts have relied on this language to exclude evidence of a defendant's financial status. *See, e.g., Pivot*

7

*Point Int'l, Inc. v. Charlene Products, Inc.*, 932 F. Supp. 220, 223 (N.D. Ill. 1996) (excluding evidence of defendant's financial situation as irrelevant to punitive damages claim under federal law)[2]; *Yund v. Covington Foods, Inc.*, 193 F.R.D. 582, 586-89 (S.D. Ind. 2000) (finding that *Zazu Designs* is controlling precedent and denying motion to compel disclosure of corporate defendant's financial information on that basis).

More recently, the court in *Jones v. Scientific Colors, Inc.*, Nos. 99 C 1959 and 00 C 0171, 2001 WL 902778 (N.D. Ill. July 3, 2001), concluded that the language in *Zazu Designs* regarding the relevance of a corporate defendant's net worth is dictum and, thus, not controlling authority on the issue. *Id.* at *1. *See also Koblosh v. Adelsick*, No. 95 C 5209, 1997 WL 311956, at *2 (N.D. Ill. June 5, 1997) ("evidence of a defendant's financial position is admissible in federal-question cases in which a plaintiff has introduced evidence that would support an award of punitive damages"). And in *Kemezy v. Peters*, 79 F.3d 33 (7th Cir. 1996), the Seventh Circuit stated that there was merely a "*suggestion* in *Zazu Designs* that [a corporate] defendant's net worth is irrelevant."[3] *Id.* at 36 (emphasis added). The court also noted that "plaintiffs who are seeking punitive damages often present evidence of the defendant's wealth," though they are not required to do so. *Id.* at 35-37.

The Court agrees that a corporate defendant's financial information may be relevant for purposes of Rule 26 regardless of the fact that punitive damages are capped under Title VII. Indeed, juries are not permitted to know that the damages are capped. *Zazu Designs* is not to the

---

[2] *Pivot Point* was decided by Judge Easterbrook of the Seventh Circuit, sitting by designation; he is also the author of the majority decision in *Zazu Designs*.

[3] The defendant in *Kemezy* was a natural person and not a corporation.

contrary because as the *Kemezy* court stated, *Zazu Designs* merely raises the possibility that a defendant's net worth may be irrelevant, and the majority of courts addressing this issue have reached the opposite conclusion. And given the broad discovery contemplated by Rule 26, the court cannot say that defendant's financial information is irrelevant in this case.[4] *See Scranton Gillette Communications, Inc. v. Dannhausen*, No. 96 C 8353, 1998 WL 566668, at *1 (N.D. Ill. Aug. 26, 1998) ("[t]he general purpose of the Federal Rules of Civil Procedure is to promote liberal discovery in an effort to narrow the issues for trial and to prevent unfair surprise"); *Hahn v. Village of Downers Grove*, No. 98 C 7281, 1999 WL 350861, at *4 (N.D. Ill. May 26, 1999) ("[b]ecause the Federal Rules contemplate liberal discovery, 'relevancy' for Rule 26 purposes is extremely broad").

Defendant also argues, again without any citation, that the EEOC's request is "premature unless Staffing Network claims to be unable to comply with any caps for damages that might be assigned." Def. Mem., p. 6. Given defendant's lack of any supporting authority for this argument, the Court sees no basis for allowing defendant to delay the production of its financial records. Accordingly, defendant is ordered to produce the documents sought in Request Nos. 23 and 24.

C.  **List of Terminated Employees**

The EEOC seeks a list of all employees who were discharged from Staffing Network between January 1, 1999 and December 31, 2000, and the reason(s) they were discharged. Defendant objects that this information invades the privacy of the former employees, and argues,

---

[4] Defendant does not argue that it will suffer harm due to the confidential nature of the documents.

without citation to any authority, that the EEOC's request is "just another way of obtaining what is contained in an employee's personnel record that would otherwise be protected from production." Def. Mem., pp. 6-7. The EEOC claims that the information is relevant to the issue of punitive damages; that is, whether defendant engaged in good faith efforts to implement an anti-discrimination policy. Pl. Mem., p. 8. According to the EEOC, defendant discharged two class members, Mona Garner and Sheri Sprinkle, allegedly for poor performance. Neither woman's file contained any documentation of poor performance, but both had reportedly complained about sexual harassment prior to being discharged. If these terminations were retaliatory, the EEOC says, then they are relevant to establishing that defendant did not make good faith efforts to implement an anti-discrimination policy. The identity of other discharged employees "will allow EEOC to determine if Staffing Network's standard practice was to terminate employees for poor performance without warning or whether Ms. Garner and Ms. Sprinkle were treated differently because they informed Staffing Network of sexual harassment." *Id.* at 8-9.

The Court agrees that the production of personnel files implicates privacy concerns. *See, e.g., Gehring v. Case Corp.*, 43 F.3d 340, 342 (7th Cir. 1994) (turning over personnel files "would invade the privacy of the other employees"); *Ellman v. Hentges*, No. 99 C 50269, 2001 WL 649508, at *1 (N.D. Ill. June 8, 2001) (finding that "likelihood of discovering relevant information in . . . personnel files [was] outweighed by the employees' privacy interests"); *Graham v. Casey's General Stores*, 206 F.R.D. 251, 257 (S.D. Ind. 2002). The Court also agrees that privacy concerns notwithstanding, personnel files may be discoverable under certain circumstances. *See, e.g., Tomanovich v. Glen*, No. IP 01-1247 CY/K, 2002 WL 1858795, at *6-7

10

(S.D. Ind. Aug. 13, 2002) (plaintiff entitled to personnel files of individuals employed in same position during relevant time period); *Wright v. Hollywood Casinos*, No. 01 C 4704, 2002 WL 989457, at *2 (N.D. Ill. May 14, 2002) (same); *Spina v. Forest Preserve of Cook County*, No. 98 C 1393, 2001 WL 1491524, at *3 (N.D. Ill. Nov. 23, 2001) (court ordered defendant to produce personnel files of individual defendants and of females who, like plaintiff, complained of sexual harassment and/or discrimination). However, this is of no consequence to the present motion.

In this case, the EEOC is not seeking to compel the production of any personnel files. Rather, it seeks a list of the names and bases for discharge of all employees terminated by defendant between January 1, 1999 and December 31, 2000. The Court does not see how the EEOC will be able to determine whether an individual was discharged "without warning," much less whether this constitutes defendant's "standard practice," simply by obtaining this information. However, defendant does not challenge the interrogatory on the grounds of relevance. Moreover, "[t]he federal rules provide for liberal discovery, particularly in Title VII cases," *Orlowski v. Dominick's Finer Foods, Inc.*, No. 95 C 1666, 1998 WL 26171 (N.D. Ill. Jan. 16, 1998), and the EEOC is not seeking any information generally believed to implicate privacy concerns. *See Davis v. Precoat Metals, a Division of Sequa Corp.*, No. 01 C 5689, 2002 WL 1759828, at *4 (N.D. Ill. July 29, 2002) (finding the following personnel information confidential and subject to redaction: "unlisted addresses and telephone numbers, social security numbers, marital status, medical and health insurance information, criminal history, and credit information (e.g., request for garnishment of wages)"); *Sykes v. Target Stores*, No. 00 C 5112, 2002 WL 554505, at *3 n.5 (N.D. Ill. Apr. 15, 2002). Defendant has not presented any basis for

11

withholding the information requested in Interrogatory No. 14, and the EEOC's motion to compel this information is granted.

## CONCLUSION

For the reasons stated above, the EEOC's motion to compel is granted in part and denied in part. Defendant is ordered to produce documents responsive to Request Nos. 23 and 24, and to respond to Interrogatory No. 14 by November 11, 2002. In addition, defendant has until November 7, 2002 to respond to the EEOC's motion to compel a response to Interrogatory No. 5. The EEOC will then have until November 14, 2002 to reply.

NAN R. NOLAN
United States Magistrate Judge

Dated: OCT 3 1 2002